A07A0520. CARRUTH v. THE STATE.
(649 SE2d 557)

ADAMS, Judge.

Poneil Carruth was convicted by a jury of three counts of armed robbery, two counts of kidnapping, four counts of rape, one count of robbery and two counts of burglary. He appeals following the denial of his motion for new trial, and we affirm.

The charges against Carruth arose in connection with a series of assaults committed against four different women in Clarke County over a period of several months in 1996. DNA samples were taken from each of the four rape victims at the time of the incidents. No DNA matches were discovered until 1999 when Detective David Leedall of the Athens-Clarke County Police Department made a fingerprint identification of Carruth as a suspect in one of the four cases. This identification led to the issuance of a search warrant authorizing that a sample of blood be taken from Carruth for DNA analysis in connection with all four cases. Evidence at trial matched Carruth's DNA to the samples taken from each of the four victims.

1. Carruth argues that the trial court erred in denying his motion to suppress the DNA evidence obtained pursuant to the search warrant. He asserts that the warrant was based upon insufficient fingerprint evidence, which failed to provide an accurate foundation for identifying Carruth as a suspect in all four crimes.

We will not disturb the trial court's finding on a motion to suppress if there is any evidence to support it, and we will accept the trial court's decision with regard to questions of fact and credibility

unless clearly erroneous. *Hulsey v. State*, 284 Ga. App. 461, 463 (3) (643 SE2d 888) (2007). The State bore the burden of showing the lawfulness of the search and seizure made pursuant to the warrant in this case. "This burden is satisfied by production of the warrant and its supporting affidavit, and by showing either by those documents or by other evidence that the warrant is not subject to the statutory challenge alleged." (Punctuation and footnote omitted.) *Colon v. State*, 275 Ga. App. 73, 80-81 (7) (a) (619 SE2d 773) (2005).

At the hearing on the motion to suppress, the State presented the search warrant and supporting affidavit, which set out the underlying facts of each alleged incident and the evidence which the State believed tended to identify Carruth as a suspect in the cases. In addition to the fingerprint evidence discussed below, the affidavit asserted that analysis of the DNA samples taken from all four crime victims showed that all four samples matched. Thus, a DNA match from one case presumably would be a DNA match for all four cases. In addition, two of the victims identified Carruth's picture from a photographic lineup as the one "most like" their assailants, although both victims said that another photo also resembled the perpetrator. And although one of the victims had originally identified another man as the perpetrator, that man had been cleared by DNA analysis. The affidavit also noted that Carruth, though incarcerated at some point in 1996, was out of jail at the time of the alleged incidents. The affidavit also conceded that none of the other prints lifted from any of the crime scenes matched Carruth's.[1]

Detective Leedall testified that in 1999 he was the automated fingerprint identification operator at the Athens-Clarke County Police Department, and as part of that job, he would take fingerprints from old cases and input them into what was then a new automated fingerprint identification system (AFIS) to look for matches. Police found fingerprints at several of the crime scenes in this case. While Leedall did not input those fingerprints directly into the AFIS, he ran a fingerprint from the same time frame with a similar pattern to a print found at one of those crime scenes. That fingerprint came from a crime scene that the police believed to be related to the four rape cases, but which did not involve a rape. The print resulted in a match to Carruth's fingerprints on file with the AFIS.

Based upon that information, Leedall took a hard copy of Carruth's fingerprints from the AFIS office and visually compared them to the print with a similar pattern, a partial fingerprint taken from one of the rape crime scenes in this case. Leedall found it to be a positive match to Carruth's prints. Following standard procedure,

---

[1] Leedall confirmed this information during his hearing testimony.

Leedall sought verification of this determination by asking another officer in his department, as well as two officers he knew to be available from the Dougherty County Sheriff's Office to confirm his findings, which they did. The analysis was also verified by an examiner at the Georgia Bureau of Investigation (GBI).

Carruth questions the accuracy of this identification noting that it resulted from a visual examination of a partial print and thus was subject to error. He also notes that prior GBI and Federal Bureau of Investigation searches between 1996 and 1999 failed to turn up any matches to the fingerprint, although Carruth's prints were presumably already in their systems. Moreover, none of the other prints matched Carruth's. We find these arguments unpersuasive.

A great difference exists between the level of proof required to prove guilt in a criminal case and the level required to show probable cause for arrest or search:

> The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

(Citation and punctuation omitted.) *DeYoung v. State*, 268 Ga. 780, 786-787 (7) (493 SE2d 157) (1997). See also *Berry v. State*, 163 Ga. App. 705, 707 (294 SE2d 562) (1982). And this Court, giving the magistrate's finding of probable cause substantial deference, reviews that decision to determine "if the magistrate had a 'substantial basis' for concluding that probable cause existed to issue the search warrants." (Citation omitted.) *DeYoung v. State*, 268 Ga. at 787 (7).

Based upon our review of the affidavit and the evidence, we find that the magistrate had a substantial basis for finding probable cause to issue the search warrant, and thus the trial court properly denied Carruth's motion to suppress. See *Filix v. State*, 264 Ga. App. 580, 581-582 (2) (591 SE2d 468) (2003).

2. Carruth next asserts that the trial court erred when it allowed the improper admission of expert testimony on the issue of DNA testing. He contends that the trial court should have applied the evidentiary standard adopted by the General Assembly for civil cases under the Georgia Tort Reform Act, OCGA § 24-9-67.1. This standard was taken from the federal standard announced in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. 579 (113 SC 2786, 125 LE2d 469) (1993). Carruth contends that the disparity in evidentiary standards

for criminal cases under Georgia versus federal law violates the equal protection rights secured by both the Georgia and United States Constitutions.

We note, however, that Carruth failed to object to the expert testimony on this ground in the trial court below. Pretermitting the issue of whether Carruth properly preserved this issue for appeal, the Supreme Court of Georgia recently decided the issue against Carruth when it adopted the following holding from this Court's opinion in *Carlson v. State*, 280 Ga. App. 595, 598 (1) (634 SE2d 410) (2006):

> In light of the long-standing history of *Harper*[2] and its progeny, which existed when the legislature enacted the *Daubert* test in OCGA § 24-9-67.1 as a part of Georgia's Tort Reform Act, we do not conclude that the legislature intended to abandon the *Harper* evidentiary test in criminal cases. Indeed, the almost verbatim re-enactment of the old OCGA § 24-9-67 as new OCGA § 24-9-67 would seem to affirm Georgia's traditional reliance upon *Harper* in criminal matters, and we expressly hold that new OCGA § 24-9-67, and neither *Daubert* nor OCGA § 24-9-67.1 controls the admission of evidence in criminal proceedings.

(Citation and punctuation omitted.) *Vaughn v. State*, 282 Ga. 99, 101 (3) (646 SE2d 212) (2007). We are not persuaded that Carruth's equal protection arguments would alter the Supreme Court's conclusion that the *Harper* standard still governs criminal trials.[3] And because Carruth does not contend that the expert's testimony failed to meet the *Harper* standard, we find no basis for reversal on this ground.

3. Carruth also argues that the trial court erred in denying his motion for new trial on the ground that the trial judge made comments which unduly highlighted and overemphasized the testimony of the DNA expert in violation of OCGA § 17-8-57.

"To constitute an improper comment under OCGA § 17-8-57, the trial court's statement must express an opinion about whether the evidence [has] proven a material issue in the case, whether a witness was credible, or whether the defendant was guilty." (Citation and punctuation omitted.) *Anthony v. State*, 282 Ga. App. 457, 458 (1) (638 SE2d 877) (2006). We note that Carruth failed to object to the

---

[2] *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982).

[3] See, e.g., *Hardin v. State*, 277 Ga. 242, 243 (2) (587 SE2d 634) (2003) ("Individuals are only 'similarly situated' if they are charged with the same crime or crimes.") (footnote omitted); *Woodard v. State*, 269 Ga. 317, 322 (3) (496 SE2d 896) (1998) ("for equal protection purposes, all criminal defendants are not similarly situated, but all defendants accused under" the same Code section are similarly situated) (footnote omitted).

comment at issue at trial, nor did he move for a mistrial. Therefore, he is entitled to reversal "only if the trial court's comments seriously affected the fairness, integrity, and public reputation of these judicial proceedings." (Citation and punctuation omitted.) *Bolden v. State*, 281 Ga. App. 258, 259 (2) (636 SE2d 29) (2006).

The alleged OCGA § 17-8-57 violation occurred after the expert had explained the DNA testing procedures used and linked Carruth's DNA to two of the four rape cases at issue. At that point, the trial court interjected, saying, "Let me interrupt you a moment, please. It's important for all the jurors to be alert and paying attention to what's going on. Ma'am? Are you still with us?" Afterward, the witness's later testimony linked Carruth's DNA to the remaining two rape cases. Carruth contends that the judge's comment improperly highlighted this evidence by directing the jury to focus on that portion of the prosecution's case.

But the State asserts that the judge was merely trying to get the attention of a dozing juror without commenting on the evidence. Earlier in the day, the judge reported to counsel that a juror had reported that a fellow juror was "nodding off during the proceedings." The trial court attempted to remedy the situation by moving the juror to the front row and asking the deputies to ensure that she was provided with water. The judge also asked that counsel let him know if they observed the juror napping.

We find that the trial court's statements were not likely to prejudice the jurors, as they were clearly directed at one juror to encourage her to stay awake and pay attention during the presentation of evidence. The comments were not an admonition to the jury as a whole to pay attention to the particular witness on the stand. Moreover, the trial court later instructed the jury that none of its rulings or comments was "intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence or upon [Carruth's] guilt or innocence." Accordingly, we find that the comments did not "seriously affect the fairness, integrity, or public reputation of the proceedings" and thus no reversal is warranted.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JULY 9, 2007.

*Eric W. Norris*, for appellant.

*Kenneth W. Mauldin, District Attorney, Nancee E. Tomlinson, Assistant District Attorney*, for appellee.