717 S.E.2d 344 (2011)
311 Ga. App. 848
In the Interest of A.C.R-M., a child.
No. A11A1198.
Court of Appeals of Georgia.
October 4, 2011.
*345 Drummond & Swindle, Jason W. Swindle, Carrollton, for appellant.
Peter J. Skandalakis, Dist. Atty., John Michael Daley, Asst. Dist. Atty., for appellee.
DOYLE, Judge.
A.C.R-M. was adjudicated delinquent for committing the act of criminal damage to property in the second degree.[1] He appeals following the denial of his motion for new trial, challenging the sufficiency of the evidence. For the reasons set forth below, we vacate and remand for adjudication and disposition consistent with this opinion.
In considering a challenge to the sufficiency of the evidence supporting an adjudication of delinquency, we construe the evidence and every inference from the evidence in favor of the juvenile court's adjudication to determine if a reasonable finder of fact could have found, beyond a reasonable doubt, that the juvenile committed the acts charged. Thus, the standard of review on appeal in a case of adjudication of delinquency of a juvenile is the same as that for any criminal case. In reviewing such cases, we do not weigh the evidence or determine witness credibility.[2]
So viewed, the evidence shows that A.C.R. M. and D.S., another juvenile, lived in the Cedar Heights Mobile Home Park. The property manager inspected the property on Monday, March 29, 2010, after receiving a phone call from the maintenance worker regarding damage to several mobile homes. The manager observed what appeared to be holes from a pellet gun in nine of the mobile homes, including the one on Lot 99. The park owner testified that he did not receive any reports of damage to the mobile homes before March 27, and the investigating officer stated that he was not aware of any damage reports at the property before or after the weekend of March 27-29.
T.J., an 11-year-old girl who also lived in the mobile home park, testified on direct examination that she observed A.C.R-M. and D.S. "shooting the trailers with a BB gun," including Lots 6 and 99. According to T.J., the damage occurred on a Saturday, and she told her mother and the property manager about the incident on the following Monday. During cross-examination, T.J. testified that she saw A.C.R-M. shoot a BB gun toward the home located on Lot 99 only, and that he did so some time after she spoke to the police. T.J. later indicated, however, that she was "not sure" when the damage to Lot 99 occurred, and she answered affirmatively when asked whether she had "been kind of confused on some of the dates." Both T.J. and her father testified that T.J.'s brother sold a pellet gun to A.C.R-M.
The property manager and the maintenance worker inspected the damage to each of the approximately eight to ten mobile homes that sustained damage, which included approximately twenty to thirty broken windows total. The property owner then obtained an estimate from a window installer, which indicated that each replacement window would cost $56. According to the property owner, the damage to the property totaled $2,041.
The State filed a delinquency petition on April 22, 2010, charging A.C.R-M. with criminal damage to property in the second degree by intentionally damaging "the windows and *346 door[s] of several homes in Cedar Heights." At the conclusion of the trial, the juvenile court found that A.C.R-M. had committed criminal damage to property in the second degree and adjudicated him delinquent.[3] A.C.R-M. filed a motion for new trial, which the juvenile court denied, and this appeal followed.
A.C.R-M. argues that the State failed to prove that he participated in damaging the trailers and that it failed to prove that the damage to the trailers exceeded $500.
OCGA § 16-7-23(a)(1) provides that "[a] person commits the offense of criminal damage to property in the second degree when he ... [i]ntentionally damages any property of another person without his consent and the damage thereto exceeds $500.00...." "Questions of reasonableness are reserved for the factfinder, and we will not disturb its finding that the evidence was sufficient to exclude every reasonable hypothesis save that of guilt unless the adjudication is unsupportable as a matter of law."[4]
T.J. testified that she observed A.C.R-M. "shooting the trailers with a BB gun." A.C.R-M. argues that T.J.'s testimony was contradictory because she later testified that he shot at Lot 99 only, and he did so after she spoke to the police on March 29. A.C.R-M. cannot, he contends, be adjudicated delinquent based on actions that occurred after the delinquency petition was filed. Pretermitting the validity of this contention, the contradictions in the evidence do not require reversal.
Clearly, as she conceded, T.J. was confused regarding the dates of A.C.R-M.'s involvement. The juvenile court, explained, however, that "I'm going to give some leeway, as far as what that time period with an [11]-year-old, as to her concept of time." Thereafter, at the motion for new trial hearing, after noting that "11-year-olds are not the best on time sequence," the trial court found that the State had proved that A.C.R-M. committed the property damage beyond a reasonable doubt based on testimony that A.C.R-M. purchased a pellet gun from T.J.'s brother, T.J.'s testimony that A.C.R-M. shot at the home on Lot 99, and testimony that all of the reported damage to the property occurred between March 27 and March 29.
[T]he weight and credibility of witnesses are questions for the trier[ ] of fact; that some evidence offered by a witness seems contradictory to h[er] own or to some other's, or incomplete or uncertain, does not automatically discredit the evidence given by that witness, or others, for it is the function of the trier[ ] of fact to determine to what evidence it gives credence. It is not for this Court to determine or question how the trier of fact resolved any apparent conflicts or uncertainties in the evidence. Rather, on appeal, we indulge every contingency in favor of the verdict.[5]
Viewed in the light most favorable to the delinquency adjudication, there was sufficient evidence to conclude that A.C.R-M. damaged property at the mobile home park.[6]
A.C.R-M. also argues, however, that there was insufficient evidence to establish that the value of the damage exceeded $500, and we agree. The property owner based his $2,041 damage calculation on other people's observations of the damage and a window installer's estimate of the cost to replace each window; there was no evidence that the repairs occurred. As we held previously in a similar case, the estimate is inadmissible hearsay.[7] Furthermore, the property owner's estimate was for the cumulative damage done to the property, and there was no evidence admitted at trial regarding the number of windows that would have to be replaced in *347 the home(s) that A.C.R-M. himself damaged.[8] "This is clearly insufficient to establish the value of the damages to be in excess of $500."[9]
"Thus, the juvenile court erred [by] finding that [A.C.R-M.] committed criminal damage to property in the second degree."[10] Nevertheless, based on our holding that the juvenile court did not err by finding that A.C.R-M. did shoot a pellet gun towards at least one mobile home, "the evidence is sufficient to support an adjudication of delinquency for committing an act which would support a conviction for the offense of criminal trespass to property as a lesser included offense of criminal damage to property in the second degree."[11]
OCGA § 16-7-21(a) provides that "[a] person commits the offense of criminal trespass when he or she intentionally damages any property of another without consent of that other person and the damage thereto is $500.00 or less...." Here, the evidence showed that A.C.R-M. shot a pellet gun toward a mobile home, which sustained a broken window.
Accordingly, we remand this case with direction that an adjudication of delinquency and a disposition thereof be entered for committing an act which would have supported a conviction for the offense of criminal trespass to property were [A.C.R-M.] an adult. This result does not violate [A.C.R-M.'s] due process right to be notified of the charges against him since a defendant is on notice of all lesser crimes which are included in the crime charged as a matter of law.[12]
Judgment vacated and case remanded.
ELLINGTON, C.J., and MILLER, P.J., concur.
NOTES
[1] OCGA § 16-7-23(a)(1).
[2] (Punctuation omitted.) In the Interest of C.H., 306 Ga.App. 834, 836-837(3), 703 S.E.2d 407 (2010).
[3] D.S. was tried at the same time, and he was also adjudicated delinquent for committing criminal damage to property in the second degree.
[4] In the Interest of M.C.A., 263 Ga.App. 770, 772(2), 589 S.E.2d 331 (2003).
[5] (Punctuation omitted.) In the Interest of J.S., 296 Ga.App. 144, 147(2)(a), 673 S.E.2d 645 (2009).
[6] See Adams v. State, 300 Ga.App. 294, 300(2)(b), 684 S.E.2d 404 (2009); J.S., 296 Ga.App. at 147-148(2)(a), 673 S.E.2d 645.
[7] See Adams, 300 Ga.App. at 300 (2) (b), 684 S.E.2d 404. See also In the Interest of J.T., 285 Ga.App. 465, 466(1), 646 S.E.2d 523 (2007); In the Interest of A.F., 236 Ga.App. 60(1), 510 S.E.2d 910 (1999).
[8] The written estimate was not admitted at trial. It was, however, included as an attachment to the "Victim Impact/Damage and Loss Statement," which is in the record. The attachment indicates that a single window was damaged in the home on Lot 99, for a total of $56.
[9] Adams, 300 Ga.App. at 300(2)(b), 684 S.E.2d 404.
[10] J.S., 296 Ga.App. at 148(2)(b), 673 S.E.2d 645.
[11] Id.
[12] (Citations and punctuation omitted.) Id. at 149(2)(b), 673 S.E.2d 645. See also In the Interest of J.T., 285 Ga.App. at 466(2), 646 S.E.2d 523.