**FIRST DIVISION
BARNES, P. J.,
LAND and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 24, 2024**

# In the Court of Appeals of Georgia

A23A1422. FORD v. STATE.

LAND, Judge.

After a jury trial, Joseph Ford was convicted of first and second degree burglary.[1] He appeals from the denial of his motion for new trial. He argues that the trial court erred by denying his motion to sever the burglary charges against him. He also challenges the sufficiency of the evidence. For the following reasons, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation and punctuation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weight the evidence nor judge the credibility of

---

[1] Ford was acquitted of one count of making a false statement.

witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

So viewed, the record shows that Jipal Bhalodwala and his wife, Maitry Patel, owned a Stop N' Save convenience store on West Montgomery Street in Milledgeville. Ford worked the morning shift as a stocker at the Stop N' Save for approximately eight months prior to the burglary at issue. Tierra Fraley, Ford's friend, worked at the store for about a week before she was fired. Bhalodwala testified that while Fraley was employed at the store, Ford used to visit her during her evening shift and helped her out even though Ford was not paid for this work. After Fraley was fired from the store, the owners noticed that Fraley would visit Ford at the store even though the owners disapproved of this. Fraley was given a set of store keys when she was hired because she was supposed to close the store in the evening. She did not return her store keys to the owners after she was fired, but instead gave them to Ford to return for her and told the owners that she had "put them in the box." Ford never returned the keys.

2

After the store was closed on September 30, 2019, Bhalodwala and Patel received a call from their alarm company that "something happened" at the store. When they reviewed the store's surveillance footage, they did not notice anything amiss and the alarm company disarmed the alarm. When the owners later arrived at the store, they noticed that the front door was unlocked and the solid bar that was usually placed across the door to secure it was not in place. They then noticed that the money that they kept stored in a freezer was missing. Each evening, the employee who closed the Stop N' Save placed the register's money in a bag and placed the bag inside a chest freezer in the office. Patel called the employee who had closed the store the night before, and she told Patel that she put the money in the freezer. The amount stolen was $3,814.94.

The owners then called the police. The store's surveillance footage from the night before revealed that a person had come into the store when the alarm was triggered. The video showed a person wearing a dark onesie-type suit, a stocking cap, a face mask and aviator sunglasses enter and go directly into the store office. Fifteen seconds later, the video showed the person leave the store while holding a bag. The video then showed the suspect running across the street from the store towards West

Thomas Street and Cobb Street. Patel testified that she could not identify the person who came into the store.

Ford's friend, Calandra Davis, testified at trial. She recounted that Ford called and told her that "his store had got robbed." Ford told Davis that a detective might be calling her, and he asked her to be "his alibi" and tell the police that he had been with her the "whole day." Davis then lied to law enforcement officers who subsequently contacted her, telling them that Ford had been with her the entire night. At trial, Davis testified that Ford did not actually come to her house until about 3:00 a. m. on the morning of the burglary. Davis testified that Ford always gave her money and that morning he gave her about $250, telling her that it was from a social security "lump sum." Fraley testified that Ford took her to Wal-Mart soon after the burglary and was "just flashing money."

After officers discovered Ford's vehicle parked at Davis's home, Davis told them that he stayed in a vacant house up a trail from her home. The vacant house was on Cobb Street, near the Stop N' Save, and was owned by Marie Lamar. Davis testified that Ford had previously brought her to the vacant home on several occasions and that he allowed her to take some home accessory items home with her.

4

Officers then obtained a search warrant to search the home. On March 4, 2020, officers arrived at the home and saw that the rear door was still secured, but damaged. The detectives knocked, entered the home, and found Ford hiding under the covers on a bed. Ford was arrested and taken into custody. Alma Watkins, Lamar's friend, testified that she had been the caretaker of the home but that she had been unable to visit the home since 2019 when her husband got sick. She went to the home after Ford's arrest and found that many items were missing from the home, including the kitchen cabinets and appliances, kitchen supplies, water heater, various furniture, towels and bedding and home accessories. Officers recovered a pair of aviator sunglasses on a night stand similar to those worn by the person who burglarized the Stop N' Save. They also found mail addressed to Ford in the home.

Prior to trial, Ford's motion to sever the charges against him was denied. Ford was convicted of one count of burglary in the second degree arising from the burglary of the Stop N' Save and one count of burglary in the first degree arising from the burglary of the abandoned home. He appeals from the denial of his motion for new trial.

1. Ford argues that the trial court erred by denying his motion to sever the offenses charged. We disagree.

"Whenever two or more offenses are joined for trial solely because they are of the same or similar character, a defendant has an absolute right to sever." (Citation omitted.) *Griffin v. State*, 292 Ga. 321, 323 (3) (737 SE2d 682) (2013). However, if the offenses are not joined solely because of their similar character, a "trial court must decide whether severance would promote a just determination of guilt or innocence as to each offense." Id. at 322-323 (3). Factors relevant to this determination include whether, "considering the number and complexity of the offenses charged, the trier of fact can parse the evidence and apply the law with regard to each charge," and whether evidence of one offense would be admissible in a trial of another offense." (Citations and punctuation omitted.) Id. at 323 (3). See *Cupe v. State*, 327 Ga. App. 642, 647-648 (2) (760 SE2d 647) (2014). We review the trial court's determination for an abuse of discretion. *Houston v. State*, 242 Ga. App. 300, 302 (1) (529 SE2d 431) (2000).

The charges in this cases were joined not merely due to their similar character, but because they were factually connected. The State used overlapping evidence to

prove the burglary of the Stop N' Save and the subsequent arrest for burglary of the abandoned house. Video footage shows that the man who burglarized the Stop N' Save left the store on foot and headed towards Cobb Street, where the abandoned house was located. A detective investigating the burglary of the Stop N' Save executed a search warrant on the vacant house and interviewed the same witnesses in both cases. Davis and Fraley both testified with respect to both charges. Davis testified that Ford asked her to be his "alibi" for the Stop N' Save burglary, that Ford appeared to have a lump sum of cash, and that he was able to give her some money when she asked. Officers discovered Ford's vehicle at Davis's house and executed a search warrant on the abandoned house as a result of Davis informing them that Ford was staying there. Although Ford was not arrested until March 4, 2020, there was evidence that he had resided in the abandoned house at the time of the Stop N' Save burglary and removed items from the house at that time. Davis testified that Ford had taken her to the abandoned house in the past and allowed her to take items from the home. Further, the sunglasses worn by Ford during the burglary of the Stop N' Save were found in the abandoned house at the time of his arrest. Morover, this case "was not so complex as to impair the jury's ability to distinguish the evidence and apply the

law intelligently as to each offense." See *Boatright v. State*, 308 Ga. App. 266, 274 (2) (707 SE2d 158) (2011). Thus, "severance in this case was not mandatory, and the decision to sever the charges was instead entirely within the trial court's discretion." *Nix v. State*, 354 Ga. App. 47, 54 (4) (839 SE2d 687) (2020) (trial court did not abuse discretion in denying motion to sever charges for child molestation from charges for sexual exploitation of a child when the overlapping evidence could have been presented in both trials).

2. Ford argues that the evidence presented at trial was insufficient to support his convictions. We disagree.

> When a defendant challenges the sufficiency of the evidence to support his criminal convictions, we ask only whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld.

(Citation and punctuation omitted.) *Rider v. State*, 366 Ga. App. 260, 264 (1) (883 SE2d 374) (2022).

(a) Ford argues that the evidence was insufficient to support his conviction for second-degree burglary of the Stop N' Save as alleged in count two of the indictment because the store's owners did not identify him on the surveillance footage of the burglary. We disagree.

The indictment charged Ford with "unlawfully, without authority and with the intent to commit a theft therein, enter[ing] a building, to wit: the Stop and Save . . . contrary to the laws of the State of Georgia." See OCGA § 16-7-1 (c) (defining burglary in the second degree). See *Adams v. State*, 300 Ga. App. 294, 298-300 (2) (a) (684 SE2d 404) (2009).

Here, there was evidence from which the jurors could conclude that Ford was the person who entered the Stop N' Save and stole the money from the freezer. Ford had knowledge of where the money was hidden, he failed to return Fraley's keys to the store when asked, he asked Fraley to lie and say that she had placed the keys in the box, he called Davis and asked her to be his "alibi," he had an unusual amount of cash in the day after the burglary that he used to give to his friends, and sunglasses matching those worn by the suspect in the surveillance footage were found at his bedside table. Further, the suspect in the surveillance footage was seen walking in the

direction of the abandoned house where Ford was staying. Viewed in the light most favorable to the jury's verdict, this evidence is sufficient for a rational factfinder to find Ford guilty of burglary in the second degree beyond a reasonable doubt. See *Bryant v. State*, 285 Ga. App. 508, 508-509 (1) (646 SE2d 717) (2007) (evidence was sufficient to support conviction for burglary at a store when the store was burglarized between the store's closing and opening times, defendant was inside the store on day before burglary and asked an employee about opening and closing times, burglar gained access to the store's roof by climbing on a deer stand while wearing a canvas bag and hat and witness recalled seeing defendant wearing hat and carrying a bag as he ran toward alley near store after the burglary).

(b) Ford argues that the evidence was insufficient to support his conviction for first-degree burglary because the State failed to prove that Ford had the intent to commit theft while inside the house.

The indictment charged Ford with "unlawfully, and without authority and with the intent to commit a theft therein, enter[ing] a dwelling house of another, to wit: Marie Helene Lamar, located at 520 N. Cobb Street Milledgeville, Georgia." See OCGA § 16-7-1 (b) (defining burglary in the first degree).

Here, there was evidence from which the jury could conclude that Ford entered the vacant house on North Cobb Street with the intent to commit theft. Fraley knew that Ford had been staying in the house at the time of the Stop N' Save burglary and even directed law enforcement to the house when they arrived to execute the search warrant. Davis also knew that Ford had been staying at the house, he had brought her to the house on several occasions prior to the Stop N' Save burglary, and he even allowed her to remove household items that she wanted. The home's caretaker, Alma Watkins, testified that there were items missing from the house since she last visited the home. "A jury may reject a defendant's explanation for his unauthorized entry where that explanation is inconsistent with other direct and circumstantial evidence." (Citation and punctuation omitted.) *Paul v. State*, 331 Ga. App. 560, 561 (1) (769 SE2d 396) (2015) (unauthorized entry into a vacant dwelling house of another constitutes burglary). Having reviewed the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence for the jury to find Ford guilty beyond a reasonable doubt of burglary. See *Solomon v. State*, 342 Ga. App. 836, 837 (1) (805 SE2d 293) (2017) (jury was entitled to infer from evidence that defendant broke into a shed without authority for the purposes of taking a ladder when he was apprehended

under the window of another building on the same property folding up a ladder and a damaged window screen was found below the window).

*Judgment affirmed. Barnes, P. J., and Watkins, J., concur.*