## A11A1816. BROOKS v. THE STATE.
(723 SE2d 29)

MILLER, Judge.

Following a jury trial, Derrick Brooks was convicted of two counts of aggravated stalking (OCGA § 16-5-91 (a)). Brooks filed a

---

motion for new trial, which the trial court denied. On appeal, Brooks contends that the trial court erred by denying his motion for a directed verdict, because the evidence was insufficient to sustain his convictions. He also contends that the trial court erred by excluding or limiting the testimony of certain defense witnesses, and by failing to instruct the jury on lesser included offenses. We discern no error and affirm.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Conflicts in the testimony of the witnesses, including the state's witnesses, are a matter of credibility for the jury to resolve.

(Punctuation and footnote omitted.) *Hargrove v. State*, 289 Ga. App. 363 (657 SE2d 282) (2008).

So viewed, the evidence shows that Brooks and the victim began dating in 2003. In July 2005, Brooks and the victim, who was pregnant with the couple's child, had a physical altercation at their residence, which led to Brooks's guilty plea to the offense of family violence battery. Although Brooks and the victim reconciled and were married in 2006, they continued to have verbal disputes, which ultimately led the victim to move out of the residence.

Brooks became upset when the victim refused to disclose her new residence, and over the course of several months, Brooks threatened the victim through repeated phone calls and text messages. Brooks told the victim that he would find her, and that he would always keep "tabs" on her. Fearing for her safety, the victim obtained a temporary protective order, which was served upon Brooks on July 29, 2009.

Despite the protective order, Brooks continued to contact and harass the victim. On July 30, 2009, the victim answered a call from Brooks, heard his voice, and terminated the call. Brooks called the victim twice more in August 2009. After the victim reported Brooks's ongoing harassment to law enforcement, he was arrested for his repeated violations of the temporary protective order, which was extended by another six months as a result of his violations.

On December 4, 2009, Brooks was released from jail on his own recognizance with certain bond conditions, one of which prohibited any type of contact with the victim. From December 2009 through January 2010, Brooks made repeated calls to the victim. Then, on

February 20, 2010, Brooks sent the victim 14 text messages. The text messages indicated that Brooks knew of the victim's recent sexual activity and was otherwise keeping track of the victim's actions. The repeated phone calls and text messages placed the victim in fear for her safety, and she notified law enforcement that Brooks was still contacting her.

Based upon the alleged violations of the temporary protective order and of the bond conditions, Brooks was charged with two counts of aggravated stalking. Following a jury trial, Brooks was convicted of both counts.

1. Brooks contends that the evidence was insufficient to sustain his convictions for aggravated stalking. Brooks asserts that the State failed to prove that he contacted the victim in violation of the protective order, and that the violation of a protective order, by itself, did not amount to the offense of aggravated stalking. Brooks further argues that the State also failed to establish that his contact with the victim was for the purpose of harassing or intimidating her. We disagree.

OCGA § 16-5-91 (a) provides in pertinent part:

> A person commits the offense of aggravated stalking when such person, in violation of . . . a temporary protective order . . . or condition of pretrial release in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

(Punctuation omitted.) Although the aggravated stalking statute does not define "harassing and intimidating," the phrase is defined in the simple stalking statute, OCGA § 16-5-90 (a) (1). See *State v. Burke*, 287 Ga. 377, 378 (695 SE2d 649) (2010). That statute defines "harassing and intimidating" as a

> knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

OCGA § 16-5-90 (a) (1); see also *Placanica v. State*, 303 Ga. App. 302, 304 (693 SE2d 571) (2010) ("A defendant need not engage in unequivocally hostile conduct or make explicit threats in order to be

convicted of stalking [under OCGA § 16-5-90 (a) (1)]." ") (punctuation omitted).

Even a single violation of a protective order may violate OCGA § 16-5-91 (a) if that violation is part of a pattern of harassing and intimidating behavior. See *Louisyr v. State*, 307 Ga. App. 724, 729 (1) (706 SE2d 114) (2011). To determine whether the evidence shows a pattern of harassing and intimidating behavior, "the jury can consider a number of factors, including the prior history between the parties, the defendant's surreptitious conduct, as well as his overtly confrontational acts[.]" (Punctuation and footnotes omitted.) Id. We have held that the evidence was sufficient to prove a pattern of harassing and intimidating behavior where it showed that the violation of a protective order was preceded by repeated threats to the victim. See *Hervey v. State*, 308 Ga. App. 290, 292 (707 SE2d 189) (2011); see also *Davidson v. State*, 295 Ga. App. 702, 704-706 (673 SE2d 91) (2009) (the evidence was sufficient to prove a pattern of harassing and intimidating behavior and, thus, supports a conviction for aggravated stalking, where the defendant telephoned the victim in violation of a condition of probation, which was preceded by threats and conduct that predated the imposition of the probation condition).

Here, the jury was authorized to find Brooks guilty of both counts of aggravated stalking. The victim testified that she answered the July 30, 2009 call because she recognized Brooks's cell phone number, and that upon answering the phone, she heard Brooks's voice, which she recognized based on being with him for more than five years. The victim also testified that she received additional calls in August 2009 from other phone numbers belonging to Brooks. While Brooks denied at trial that he called the victim in July or August 2009, the jury was free to reject his testimony and believe that of the victim. See *Hervey*, supra, 308 Ga. App. at 291-292 ("[T]he jurors are the judges of credibility and the weight of the evidence[.]") (citation and punctuation omitted).

Furthermore, Brooks does not deny sending text messages to the victim after his release from jail. He nevertheless contends that his text messages to the victim did not amount to aggravated stalking because they were not threatening or otherwise accompanied by any direct contact with the victim. The evidence, however, does not support his claims. The text messages referenced the victim's recent sexual activity and suggested that Brooks was keeping the victim under surveillance, because he knew about her movements. Even if his messages to the victim "were not overtly threatening, given the history of [Brooks's] persistent . . . actions, and his refusal to leave the victim alone, a rational jury could have found beyond a reasonable doubt that such acts were intended to harass and intimidate and placed the victim in fear for her safety." (Citation and punctuation

omitted.) *Patterson v. State*, 284 Ga. App. 780, 784 (4) (b) (645 SE2d 38) (2007); see also *Maskivish v. State*, 276 Ga. App. 701, 703 (1) (b) (624 SE2d 160) (2005) (holding that a defendant's letters to the victim that included disparaging remarks about the victim's appearance and referenced her infidelities, were sufficient evidence to support a finding that the acts were intended to harass and intimidate the victim and reasonably placed the victim in fear for her safety). Given the victim's testimony that Brooks had previously threatened her, Brooks's history of violence against the victim, and his repeated phone calls and text messages to the victim, there was sufficient evidence authorizing the jury to find Brooks guilty of both counts of aggravated stalking. See *Hervey*, supra, 308 Ga. App. at 292.

2. Brooks next contends that the trial court erred by excluding or limiting the testimony of two of his witnesses, which he alleges was critical to his defense. We disagree.

(a) Brooks specifically argues that the trial court erred by excluding the proffered testimony from a Department of Family and Children Services ("DFACS") employee concerning allegations of abuse by the victim's son against the couple's daughter, because this evidence was relevant to show the victim's motive, and lack of veracity, in applying for the temporary protective order against Brooks.

At a pre-trial hearing, Brooks argued that he wanted to call the DFACS employee as a witness to establish the timing between Brooks's contact with DFACS on July 28, 2009, and the victim's request to obtain a temporary protective order on July 29, 2009, contending that such demonstrated the victim sought a temporary protective order in retaliation for Brooks's report to DFACS. Brooks also argued that the DFACS employee's testimony raised an issue of veracity as to the victim's statements made in support of obtaining the temporary protective order. The trial court allowed Brooks to call the DFACS employee as a witness, but limited his questioning to the general nature and timing of Brooks's call to DFACS.

Brooks's arguments are without merit. The trial court has wide discretion in determining what evidence is relevant and material, and evidence that does not bear upon the questions being answered by the jury should be excluded. OCGA § 24-2-1; *Elrod v. State*, 195 Ga. App. 571, 572 (4) (394 SE2d 548) (1990). The trial court was authorized to conclude that the substantive molestation allegations were not relevant to the aggravated stalking charges at issue. Brooks was otherwise allowed to challenge the victim's motives and truthfulness without interjecting immaterial matter at the trial. As such, no error has been shown. See *Mosier v. State*, 218 Ga. App. 586, 587 (1) (462 SE2d 643) (1995).

(b) Brooks also contends that the trial court erred by limiting the testimony of a witness who would have testified that he had given Brooks unsolicited information about the victim. Brooks argues that the witness's testimony would have established that Brooks was not following the victim, as suggested by Brooks's text messages, but was instead getting unsolicited information from the witness.

Brooks, however, has not established that the witness's testimony was relevant to the aggravated stalking offenses as charged. Notwithstanding Brooks's arguments, his aggravated stalking charges were not based upon placing the victim under surveillance, but rather for his acts of contacting the victim in violation of the temporary protective order and his bond conditions. OCGA § 16-5-91 (a). Moreover, regardless of the exclusion of the witness's testimony, Brooks himself testified that he was not personally following or watching the victim, and that the information he included in the text messages was given to him by other individuals. Therefore, "the excluded evidence would have been cumulative of [Brooks's] trial testimony that had already been admitted. In light of its cumulative nature, any error in the exclusion of the evidence was harmless." (Citation omitted.) *Bearfield v. State*, 305 Ga. App. 37, 42 (2) (699 SE2d 363) (2010).

3. In his remaining enumeration of error, Brooks contends that the trial court erred by failing to give his requested charges on the lesser included offenses of harassing phone calls and violation of a temporary protective order. We disagree.

> A crime is considered "included" in another offense when it is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged. OCGA § 16-1-6 (1). However, the complete rule with regard to giving a defendant's requested charge on a lesser included offense is: where the state's evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense, there is no error in failing to give a charge on the lesser offense.

(Punctuation omitted.) *Patterson*, supra, 284 Ga. App. at 783 (3).

Here, the State's evidence was sufficient to establish all of the elements of the aggravated stalking offenses as indicted. Brooks's defense was that he never called the victim in July or August 2009. Brooks also denied that any of his text messages to the victim were for the purpose of harassing or intimidating her.

> Thus, under the evidence, either [Brooks] was guilty of the indicted offense[s] or he was guilty of no offense whatsoever.

Where, as here, the evidence shows either the commission of the completed offense[s] as charged, or the commission of no offense, the trial court is not required to charge the jury on [the] lesser included offense[s]. Accordingly, under the circumstances existing herein, there was no error in the trial court's refusal to charge the lesser included offense[s].

(Punctuation omitted.) *Patterson*, supra, 284 Ga. App. at 783 (3).
*Judgment affirmed. Ellington, C. J., and Doyle, P. J., concur.*

DECIDED JANUARY 30, 2012 — 

*Stephanie R. Lindsey*, for appellant.
*Layla H. Zon, District Attorney, Melanie M. Bell, Assistant District Attorney*, for appellee.