**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.** **(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)** **http://www.gaappeals.us/rules/**

**February 6, 2013**

# In the Court of Appeals of Georgia

A12A2040. ANDERSON v. THE STATE.

PHIPPS, Presiding Judge.

Tiffany Anderson appeals her conviction for criminal trespass. She contends that the trial court erred in refusing to give her requested jury charge on voluntary intoxication. We affirm.

A trial court's refusal to give a requested jury charge is not error unless the request is entirely correct and accurate; is adjusted to the pleadings, law, and evidence; and is not otherwise covered in the general charge. And we review a trial court's refusal to give a requested jury charge under an abuse-of-discretion standard.[1]

---

[1] *Jones v. State*, 318 Ga. App. 26, 33 (3) (733 SE2d 72) (2012) (punctuation and footnotes omitted).

The evidence pertinently showed that on April 25, 2010, police officers responded to a call of suspicious activity at a place of business. When they arrived, they observed a damaged vehicle in the middle of the roadway. They observed that a door to the business was open and that a window pane next to another door was broken. They found Anderson inside the building; she was lying on the floor, holding a bottle of an alcoholic beverage.

The police questioned Anderson, from whose person an odor of alcohol emanated; Anderson could communicate, although with slurred speech. The police determined that Anderson was the owner of the vehicle, and a blood test later revealed that her blood-alcohol content was 0.241 grams, more than three times the legal limit to drive or be in actual physical control of a vehicle.[2] The police interviewed near the scene Anderson's friend, whose home Anderson had recently left.

Anderson's testimony at trial was as follows. On April 25, 2010, she and her ex-boyfriend went to a party at the home of a friend. The two met beforehand and agreed that the ex-boyfriend would drive Anderson's vehicle to the friend's home and take Anderson home at the end of the evening. The ex-boyfriend stopped at a store

---

[2] See OCGA § 40-6-391 (a) (5).

and purchased alcohol; Anderson consumed an alcoholic beverage in the vehicle on the way to the party. When they arrived, Anderson drank two or three more alcoholic beverages. Anderson testified that her ex-boyfriend began behaving badly toward her, and she wanted to leave. Anderson asked her ex-boyfriend to take her home as he had earlier agreed to do. She asked him whether he was "okay" to drive. According to Anderson, her ex-boyfriend said he had drunk only two beers; so, he drove.

Anderson testified that she was tired and believed she had fallen asleep in the vehicle; but then something "jarred [her] kind of awake." When she awoke, the vehicle was in a ditch. The friend whose home she and her ex-boyfriend had recently left, arrived at the scene of the incident. Anderson testified that she was very angry with her ex-boyfriend about the condition of her vehicle, that she did not want to leave her vehicle, and that her ex-boyfriend left the scene. She then walked to the parking lot of a church to see whether anybody was there. When asked whether she remembered entering the business in which the police found her, which was not a church, Anderson replied, "No." Anderson testified that she had not intended to break into the business. She testified: "I feel terrible. I mean, I feel really bad about that and doing that to her. It's not the kind of person that I am."

The owner of the business where Anderson was found testified that she did not know Anderson. She testified that the incident occurred on a Saturday, and that the following Monday, Anderson went back to the business and apologized to her.

Anderson requested the following jury charge with respect to intoxication as a defense to criminal trespass:

> If the influence of alcohol (drugs or narcotics) impairs a person's mind to the extent that the person is not able to form the intent to do the act charged, that person would not be criminally responsible for the act. Whether that is true is a question for you, the jury, to decide. Whether the defendant in this case was voluntarily intoxicated, at or during the times alleged in this indictment, is a matter solely for you, the jury, to decide.

The trial court did not give this charge; rather, as it concerned intoxication as a defense to the charged crime, the trial court charged the following.

> Georgia law provides that voluntary intoxication shall not be an excuse for any criminal act. It further provides that if a person's mind when not affected by intoxicants is capable of distinguishing between right and wrong as well as of reasoning and acting rationally and the person voluntarily deprives herself of reason by consuming intoxicants and commits a criminal act while under the influence of such intoxicants, the person is criminally responsible for such acts to the same extent as if the person were sober. Whether or not the defendant in this case was

4

voluntarily intoxicated at or during the time alleged in this accusation is a matter solely for you, the jury, to determine.

"[I]t has long been solidly established that voluntary intoxication shall not be an excuse for any criminal act or omission,[3] except in the extreme situation where the intoxication has resulted in the alteration of brain function so as to negate intent, and even then, the brain function alteration must be more than temporary."[4]

OCGA § 16-3-4 pertinently provides:

(a) A person shall not be found guilty of a crime when, at the time of the act, omission, or negligence constituting the crime, the person, because of involuntary intoxication, did not have sufficient mental capacity to distinguish between right and wrong in relation to such act.

(b) Involuntary intoxication means intoxication caused by

(1) Consumption of a substance through excusable ignorance; or

(2) The coercion, fraud, artifice, or contrivance of another person.

(c) Voluntary intoxication shall not be an excuse for any criminal act or omission.

---

[3] See OCGA § 16-3-4 (c).

[4] *Guyse v. State*, 286 Ga. 574, 578-579 (2) (690 SE2d 406) (2010) (punctuation omitted), citing *Horton v. State*, 258 Ga. 489, 491 (371 SE2d 384) (1988); see *Bright v. State*, 265 Ga. 265, 273-274 (2) (e) (455 SE2d 37) (1995) (viable voluntary intoxication defense requires evidence of "permanent brain function alteration").

OCGA § 16-3-2 provides: "A person shall not be found guilty of a crime if, at the time of the act, omission, or negligence constituting the crime, the person did not have mental capacity to distinguish between right and wrong in relation to such act, omission, or negligence."

> OCGA § 16-3-4 limits the reach of OCGA § 16-3-2 so that the inability to distinguish between right and wrong is *not* a defense if the inability is a consequence of voluntary intoxication (but remains a defense if the inability is a consequence of *in*voluntary intoxication.) Neither code section speaks of an inability to *form an intent* to commit the act. Persons are not excused from criminal liability under either of these code sections because they are incapable of forming criminal intent. . . . Lack of intent is a defense, but it is not implicated by either OCGA § 16-3-2 or OCGA § 16-3-4.[5]

> "The law . . . excuses the young and the insane, out of tenderness towards an infirmity which is involuntary, and at the same time, to guard against the possibility that [persons] might make the same excuse whenever there is the same infirmity of reason, the law takes special care

---

[5] *Carsner v. State*, 190 Ga. App. 141 (378 SE2d 181) (1989) (punctuation omitted), citing *Foster v. State*, 258 Ga. 736, 744 (374 SE2d 188) (1988) (overruled in part on other grounds by *State v. Patillo*, 262 Ga. 259, 261, n. 1 (417 SE2d 139) (1992)).

to exclude drunken [persons] from the excuse, because their infirmity is voluntary."[6]

Accordingly, it has been held that a charge similar to the one requested by Anderson is "misleading, to the extent that it implies that voluntary intoxication in and of itself may be a defense to a crime."[7] The evidence showed that Anderson voluntarily consumed alcohol; and her ability after the night of the incident to recall events from that evening, as evidenced by her apology to the business owner two days later and by her testimony at trial, show that any alteration of Anderson's brain function that night was not more than temporary.[8] "[T]he trial court is not obligated to give requested jury instructions that do not accurately state the law or that are not adjusted to the evidence."[9] Accordingly, the trial court did not err in refusing to give Anderson's requested charge.

---

[6] *Foster*, supra at 745 (10) (citation omitted).

[7] *Williams v. State*, 180 Ga. App. 854, 855 (2) (350 SE2d 837) (1986), citing *Gilreath v. State*, 247 Ga. 814, 831 (279 SE2d 650) (1981); see *Foster*, supra.

[8] See *Guyse*, supra at 574-576 (1), 578 (2); *Horton*, supra at 489, 491 (8); *Bright*, supra.

[9] *Williams*, supra (citation and punctuation omitted); *Thomas v. State*, 285 Ga. App. 290, 292 (1) (645 SE2d 713) (2007) (a trial court must charge the jury on a defendant's sole defense if the circumstances support the charge).

Anderson's reliance on *Pope v. State*,[10] *Ely v. State*,[11] and *Johnson v. State*[12] is misplaced. In *Pope*, the Supreme Court of Georgia referred to a jury charge similar to the one Anderson requested, but such reference was merely to address an alleged contradiction in the instructions given to the jury, and was not an approval of the charge.[13] In fact, in *Pope*, the Court observed that a person can be capable of forming an intent to commit a crime but incapable of understanding the difference between right and wrong.[14] In *Ely*, the issue was not whether the court correctly charged the jury on the issue of intoxication but whether the evidence showed that the defendant was so intoxicated he could not form the specific intent necessary to convict him of the crimes charged; although giving passing approval to a charge similar to the one at issue, the court found sufficient evidence to support the jury's verdict.[15] And in

---

[10] 256 Ga. 195 (345 SE2d 831) (1986) (overruled on other grounds by *Nash v. State*, 271 Ga. 281, 283-284 (519 SE2d 893) (1999)).

[11] 159 Ga. App. 693 (285 SE2d 66) (1981).

[12] 235 Ga. 486 (220 SE2d 448) (1975).

[13] *Pope*, supra at 208 (16); see *McEver v. State*, 258 Ga. 768, 768, n. 2 (373 SE2d 624) (1988).

[14] *Pope*, supra; see *Foster*, supra at 744-745 (10).

[15] *Ely*, supra; see *Williams*, supra.

*Johnson*, the issue was whether the defendant was entitled to a charge like that at issue based on his theory of defense that drug use resulting from reliance on a physician's prescription could constitute "excusable ignorance" – an element pertinent to the defense of *involuntary* intoxication,[16] which is not involved here. Thus, none of the cases upon which Anderson relies supports the proposition that the trial court erred in refusing to charge as she requested.

*Judgment affirmed. Ellington, C. J., and Dillard, J., concur.*

---

[16] *Johnson*, supra at 489 (1); see *Swenson v. State*, 196 Ga. App. 898, 899-900 (1) (397 SE2d 211) (1990).

9