**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 28, 2016**

# In the Court of Appeals of Georgia

A16A1006. THE STATE v. DAVIS

PETERSON, Judge.

The State appeals an order granting Avery Chad Davis's motion to dismiss two counts of aggravated stalking brought against him. The State argues that the trial court erred in concluding that a provision of Davis's divorce decree did not constitute the sort of protective order that, when violated, can support a charge of aggravated stalking under OCGA § 16-5-91. We reverse because the provision that Davis is accused of violating constitutes a permanent injunction, which the plain language of the statute includes within its scope.

The record shows that on May 3, 2013, Davis's then-wife sought a temporary protective order against Davis, alleging that he had approached her vehicle and tried to break out the window with his fist. Their two minor children were inside the

vehicle. A Superior Court judge granted an ex parte protective order. At the time, a divorce suit between Davis and his then-wife was pending. After a hearing, a Final Judgment and Decree of Divorce ("Divorce Order") was entered on March 3, 2014, dismissing the temporary protective order against Davis and stating that both parties were thereafter to have "non-threatening, non-harassing communication only as it relates to their minor children's well being."[1] The court further specified in that section of the Divorce Order that Davis could not come within 150 yards of his ex-wife or their oldest child except for parental visitation or certain events such as school functions; his presence at such events involving a younger child, however, was not likewise restricted as long as he did not initiate contact with his ex-wife or the older child.

On March 18, 2015, Davis was indicted on two counts of aggravated stalking under OCGA § 16-5-91 and one count of possession of a controlled substance under OCGA § 16-13-30(a). The aggravated stalking counts alleged that Davis had violated the Divorce Order by contacting his ex-wife and their older son at a restaurant "for

---

[1] At the hearing, which took place several months before the Divorce Order was entered, Davis's counsel said that the parties had reached a "consent agreement." The signature page on the Divorce Order indicates that Davis's counsel prepared the order.

the purpose of harassing and intimidating" them. Davis filed a motion to dismiss the two counts of aggravated stalking, asserting that a violation of a divorce decree is not sufficient to support a charge of aggravated stalking under OCGA § 16-5-91(a). Following a hearing, the trial court granted the motion in a written order, finding that because the violation of a divorce order is not listed in OCGA § 16-5-91(a) as constituting such support, the State could not premise an aggravated stalking charge on a violation of Davis's Divorce Order. This appeal followed.

We review a trial court's ruling on a general demurrer de novo "in order to determine whether the allegations in the indictment are legally sufficient." *Sallee v. State*, 329 Ga. App. 612, 616 (2) (765 SE2d 758) (2014) (citations omitted).[2] On appeal, the State argues that the relevant provision of the Divorce Order constitutes a protective order as that term is used in OCGA § 16-5-91, and thus the aggravated stalking charge was proper. We agree that a violation of this provision of the Divorce Order could form the basis of an aggravating stalking charge under OCGA § 16-5-91.

---

[2] As Davis's motion essentially argued that the allegations in the indictment, even if true, would not support a conviction for aggravated stalking, the motion was equivalent to a general demurrer. *See Ingram v. State*, 240 Ga. App. 172, 172 (1) (523 SE2d 31) (1999).

3

OCGA § 16-5-91(a) defines the crime of aggravated stalking as when a person "follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person"

> in violation of a bond to keep the peace posted pursuant to Code Section 17-6-110, temporary restraining order, temporary protective order, permanent restraining order, permanent protective order, preliminary injunction, good behavior bond, or permanent injunction or condition of pretrial release, condition of probation, or condition of parole in effect prohibiting the behavior described in this subsection[.]

The sole question for our consideration is whether a violation of the language in the Divorce Order limiting Davis's contact with his ex-wife and their older child could constitute aggravated stalking within the meaning of OCGA § 16-5-91(a). This appears to be a question of first impression.

> When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant. To that end, we afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

*Deal v. Coleman*, 294 Ga. 170, 172-73 (1) (a) (751 SE2d 337) (2013) (citations and punctuation omitted). "It is well settled that where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden." *Norred v. Teaver,* 320 Ga. App. 508, 512 (1) (740 SE2d 251) (2013) (citation and punctuation omitted).

In concluding that a violation of the Divorce Order could not be the basis for an aggravated stalking prosecution under OCGA § 16-5-91, the trial court relied at least in part on the Legislature's failure to include "divorce" orders in the list of orders found in OCGA § 16-5-91(a). But the proper inquiry is not whether the title of the order matches the statutory list; instead, the question is whether the relevant provision of the Divorce Order falls within the scope of any of the types of orders listed in the statute. That pertinent language provided:

> The parties shall only have non-threatening, non-harassing communication only as it relates to their minor children's well-being. Except for the purpose of pick up and drop off, attend[ing] church events, school events, and medical appointments, [Davis] shall not be within 150 yards of [his ex-wife or their older son], [his ex-wife]'s residence, place of employment and/or school.
>
> However, nothing herein shall restrict [Davis]'s ability to attend the extra-curricular activities, church events, social events and school events

5

of [the younger son]. Specifically, even if [Davis's ex-wife and their older son] are at these events, [Davis] shall be allowed to attend. However, [Davis] shall not initiate contact with [his ex-wife or their older son] unless they initiate contact first.

The trial court apparently considered, and rejected, the possibility that this language could constitute any sort of "protective order." The trial court concluded that this language could not constitute a protective order because it allowed Davis to make some limited contact with his ex-wife and their minor children. The court also noted that procedures for extending the temporary protective order that was issued ex parte were not followed. Indeed, it appears that those procedures were not followed, *see* OCGA § 19-13-3(c), although we note that Davis consented to the Divorce Order, which apparently was drafted by his counsel. Regardless of whether the pertinent language in the Divorce Order language could constitute a "permanent protective order" given Davis's apparent waiver of certain formalities, however, we conclude that the language clearly constitutes a "permanent injunction" within the meaning of OCGA § 16-5-91.

The Georgia stalking statute, OCGA § 16-5-90 et al., does not define "injunction" or "permanent injunction." But injunctions are defined generally as court orders that prohibit someone from doing a specific act or future wrong. *See Catrett*

*v. Landmark Dodge, Inc.*, 253 Ga. App. 639, 644 (3) (560 SE2d 101) (2002); *Black's Law Dictionary* 784 (6th ed. 1990). The pertinent language in the Divorce Order prohibits Davis from future acts of specific contact against named persons, thereby constituting an injunction within the plain meaning of the term. Such specificity also meets our state's statutory requirements for injunctions, which provide that an injunction "shall be specific in terms [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained[.]" OCGA § 9-11-65(d); *see also Bearden v. Ga. Power Co.*, 262 Ga. App. 550, 553 (3) (586 SE2d 10) (2003) (in accordance with statutory requirements, injunction against property owners reasonably detailed the acts they may not interfere with). *Compare Hendrix v. Hendrix*, 254 Ga. 662, 662 (333 SE2d 596) (1985) (injunction that referred to the complaint for its sole description of the land that defendant was restrained from encumbering or conveying was an impermissible incorporation by reference). To refuse to treat the pertinent language in the Divorce Order as an injunction because it is not specifically labeled as such would impermissibly elevate form over substance. *See Abel & Sons Concrete, LLC v. Juhnke*, 295 Ga. 150, 151-52 (757 SE2d 869) (2014) (portions of summary judgment order that, in substance, comprised an interlocutory injunction must comply with

statutory notice requirements for such injunctions); *Am. Mgmt. Servs. E., Inc. v. Fort Benning Family Cmtys, LLC*, 318 Ga. App. 827, 829 (1) n.2 (734 SE2d 833) (2012) (although trial court referred to order as temporary restraining order, "looking at substance over nomenclature," it was an interlocutory injunction because it was not limited to 30 days).[3]

In conclusion, we find that the provision in the Divorce Order that Davis is accused of violating constituted a permanent injunction within the meaning of OCGA

---

[3] The State relies on *Keaton v. State*, 311 Ga. App. 14 (714 SE2d 693) (2011) (physical precedent only), for the proposition that the Divorce Order can constitute a basis for an aggravated stalking charge because the order contains "injunctive language" and "explicitly prevents stalking behavior." In *Keaton*, this court ruled 6-1 that an order that did not explicitly enjoin the defendant from having contact with his estranged wife but merely prohibited him from going to the marital residence except to retrieve or return the children for visitation could not be the basis for an aggravated stalking conviction. *Keaton*, 311 Ga. App. at 14-18 (1). The court further divided over whether the phrase "in effect prohibiting the behavior described in this subsection" as used in OCGA § 16-5-91(a) modifies only the terms "condition of pretrial release, condition of probation, or condition of parole[,]" or also the orders delineated in that subsection. Although the State relies on the reasoning of the opinion that disposed of the appeal, that opinion – concluding that the "in effect prohibiting" phrase modified all of the orders listed in the subsection – did not receive a majority of the votes of the Court as to the division addressing the defendant's sufficiency challenge (although six judges concurred in the judgment), so it is physical precedent only. *See Keaton*, 311 Ga. App. at 15-16 (1) (a); Court of Appeals Rule 33(a). This case does not require us to resolve the statutory interpretation question left open by that split decision. *Keaton* does not apply here because that case involved an order that prevented the defendant from entering a certain place, not one that prohibited contacting a certain person.

§16-5-91(a).[4] The trial court thus erred in dismissing the charge of aggravated stalking.

*Judgment reversed. Phipps, P. J., and Dillard, J., concur.*

---

[4] Davis argues that we cannot rely on his ex-wife's testimony that she thought the pertinent provision in the Divorce Order would be treated as a protective order. We do not rely on any such evidence of his ex-wife's subjective understanding of the import of the Divorce Order.