**FIRST DIVISION**
**BARNES, P. J.,**
**DOYLE, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 27, 2023**

# In the Court of Appeals of Georgia

A23A0072. HUBER v. THE STATE.

DOYLE, Presiding Judge.

Following a bench trial, the Superior Court of Hall County found John Huber guilty of one count each of aggravated assault, first degree burglary, elder abuse, aggravated stalking, terroristic threats, false imprisonment, family violence battery, simple battery, and theft by taking, as well as two counts of hindering an emergency telephone call.[1] On appeal, Huber argues that the trial court erred by failing to apply the rule of lenity to the elder abuse charge and by failing to dismiss the aggravated

---

[1] See OCGA §§ 16-5-21; 16-7-1 (b); 16-5-102 (a); 16-5-91; 16-11-37 (b); 16-5-41; 16-5-23.1 (a), (f); 16-5-23; 16-8-2; 16-10-24.3. The trial court found Huber not guilty of one count each of home invasion and second degree damage to property. See OCGA §§ 16-7-5; 16-7-23.

stalking and first degree burglary charges.[2] For the reasons set forth infra, we affirm Huber's convictions but vacate his sentence and remand for resentencing.

Viewed in the light most favorable to the verdict,[3] the evidence shows the following facts. Huber and Lindsay Rock married in 2018 and had two children together, a daughter born in 2019 and a son born in 2020. During the marriage, Huber and Rock lived in a home in Hoschton that Rock had purchased in 2009 (the "Residence").

After Rock became pregnant with their son, her relationship with Huber started to change for the worse. Huber began insulting Rock in front of their daughter and threatening to send naked photos to her colleagues and her parents. In the early morning hours of May 26, 2020, Huber woke up Rock, who was pregnant, and began yelling at her. Huber punched the television and threw a small fan across the room, breaking both items.

Things continued to escalate until January 23, 2021, a month after their son was born. Huber was physically abusive to Rock in front of their daughter and

---

[2] At trial, Huber did not contest the charges of battery, making terroristic threats, and hindering emergency phone calls.

[3] See *Yarnell v. State*, 300 Ga. App. 591 (685 SE2d 337) (2009).

threatened to kill Rock. Huber left the Residence, and Rock called the police. Rock filed for divorce the following Monday, January 25. Huber had moved out of the Residence, but Rock continued to communicate with him and facilitate his visitation with the children.

In mid-March 2021, Huber's communications with Rock became more threatening. Huber made threats to Rock and her parents over text messages and over the phone. Huber repeatedly threatened to come to the Residence, and Rock repeatedly told him he was not welcome.

On March 22, 2021, Huber showed up at the Residence unannounced and against her wishes. Huber used a heavy object to bang on the door, causing damage to the door. Rock called 911 and took a video recording of Huber trying to get into the Residence.

Rock also contacted her divorce attorney who requested a restraining order against Huber. Following an emergency hearing on March 24, 2021, a restraining order was granted that, inter alia, gave Rock exclusive use and possession of the Residence and enjoined Huber from coming within 500 yards of Rock or any member of her family, including their respective homes.

About seven weeks later, on May 12, 2021, Huber again showed up unannounced at the Residence. Although it was raining, Huber parked his car at a nearby country club and walked to the Residence through a wooded area. Rock called out when she heard the door from the garage open. Hearing Huber's voice, Rock grabbed her phone to call 911. Rock met Huber at the bottom of the stairs and told him to leave. Huber grabbed Rock, took her phone out of her hand, threw it to the ground, and threw her into a door jamb.

Rock's 68-year-old mother, who had been with Rock's infant son upstairs, heard the commotion and started coming down the stairs while trying to call 911. Huber saw the mother, grabbed her by the wrist, and used his other hand to grab her phone. Huber pulled her down approximately five stairs and then flung her against a file cabinet, causing her to injure her elbow.

Huber then pinned Rock down on the floor while holding a knife above her. Rock's mother ran outside screaming for help and found a neighbor who called 911. Huber ran out of the house. Rock used her work phone to call 911. The police arrived and ultimately found Huber in the country club bathroom, covered in mud.

The trial court found Huber guilty of 11 of the 13 charges against him. This appeal followed.

4

1. Huber argues that the trial court erred in failing to apply the rule of lenity to the elder abuse charge both by denying his general demurrer and motion to dismiss and at sentencing.

(a) Count 4 of the indictment charged Huber with violating OCGA § 16-5-102 (a) in that he "did willfully inflict physical pain and injury upon Lillian Rock, a person 65 years of age or older by[ ] dragging her down stairs[.]" OCGA § 16-5-102 (a) provides in relevant part that "[a]ny person who . . . willfully inflicts physical pain, [or] physical injury . . . upon a[n] elder person . . . shall be guilty of a felony[.]"

Prior to trial, Huber filed a general demurrer, arguing that the same facts alleged in the elder abuse count could be used for misdemeanor battery under OCGA § 16-5-23.1 (j). Following a hearing, the trial court denied the general demurrer but withheld ruling on whether the rule of lenity could apply at any post-conviction hearings.

"If all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad; but if, taking the facts alleged as premised, the guilt of the accused follows as a legal conclusion, the indictment is

5

good."[4] Here, because Huber would be guilty of elder abuse if the facts as alleged in the indictment were taken as true,[5] the indictment was sufficient to withstand the general demurrer.[6] Huber's reliance on the rule of lenity does not change this result.

> The rule of lenity applies when a statute, or statutes, establishes, or establish, different punishments for the same offense, and provides that the ambiguity is resolved in favor of the defendant, who will then receive the lesser punishment. But [Huber] has provided no authority, and we have found none, for the proposition that the rule of lenity could subject to demurrer an otherwise sufficient indictment.[7]

Further, there is no ambiguity because the statutes do not define the same offense.[8] Unlike OCGA § 16-5-23.1 (a), OCGA § 16-5-102 (a), as charged, required

---

[4] (Citation and punctuation omitted.) *Jackson v. State*, 316 Ga. App. 588, 592 (2) (730 SE2d 69) (2012).

[5] See OCGA § 16-5-102 (a)

[6] See *State v. Corhen*, 306 Ga. App. 495, 497 (700 SE2d 912) (2010).

[7] (Citations and punctuation omitted.) *Raybon v. State*, 309 Ga. App. 365, 367 (710 SE2d 579) (2011).

[8] See *Gordon v. State*, 334 Ga. App. 633, 634-635 (780 SE2d 376) (2015) ("[I]f after applying the traditional canons of statutory construction the relevant text remains unambiguous, the rule of lenity will not apply. The fundamental inquiry when making this assessment, then, is whether the identical conduct would support a conviction under either of two crimes with differing penalties, i.e., whether the statutes "define the same offense" such that an ambiguity is created by different punishments being set forth for the same crime.") (citations and punctuation omitted).

proof that the victim was 65 years or older.[9] Moreover, the two statutes do not criminalize the same conduct because OCGA § 16-5-102 (a) may be violated a number of ways; it does not require physical or bodily harm.[10]

(b) Huber contends that his conduct, as charged, subjected him to prosecution and sentencing for both battery and elder abuse. The State concedes that the misdemeanor battery count should have merged with the felony elder abuse count for sentencing.

We agree with the parties that the trial court erred[11] by not merging Count 10 (misdemeanor battery) into Count 4 (elder abuse) because, under the facts of this

---

[9] See OCGA § 16-5-100 (4) (defining "[e]lder person," as used in the Georgia Protection of Elder Persons Act of 2000, as "a person 65 years of age or older[ ]").

[10] See OCGA § 16-5-102 (a) ("Any person who knowingly and willfully exploits a disabled adult, elder person, or resident, willfully inflicts physical pain, physical injury, sexual abuse, mental anguish, or unreasonable confinement upon a disabled adult, elder person, or resident, or willfully deprives of essential services a disabled adult, elder person, or resident shall be guilty of a felony[.]"). Compare *Austin v. State*, 356 Ga. App. 839, 845-847 (3) (849 SE2d 689) (2020) (applying the rule of lenity where the defendant's conduct, as charged, subjected him to prosecution and sentencing under both OCGA § 16-5-102 (a) (financial exploitation of an elder person) and OCGA §§ 16-8-3 (a); 16-8-12 (b) (2013) (theft by deception against a person 65 years or older).

[11] See *Womac v. State*, 302 Ga. 681, 684 (3) (808 SE2d 709) (2017) ("Whether offenses merge is a legal question, which we review de novo.") (citation and punctuation omitted).

7

case, the battery conviction was included in the elder abuse conviction.[12] "When a defendant is convicted of multiple crimes based upon the same act, the principle of factual merger operates to avoid the injustice."[13] "The controlling principle is that the lesser offense merges into the greater."[14]

Here, both the the elder abuse charge (Count 4) and the misdemeanor battery charge (Count 10) required the State to prove Huber caused physical pain to Lillian Rock by dragging or throwing her down the stairs. While the elder abuse charge also required proof that Lillian Rock was 65 years or older,[15] the misdemeanor battery charge (Count 10) did not require proof of any additional fact.[16] Thus, on remand, the trial court must merge the misdemeanor battery (Count 10) conviction into the elder abuse conviction (Count 4).[17]

---

[12] See *Chadwick v. State*, 360 Ga. App. 491, 499-500 (4) (861 SE2d 612) (2021).

[13] (Citations and punctuation omitted.) *Gordon*, 334 Ga. App. at 636.

[14] *Dobbs v. State*, 359 Ga. App. 373 (857 SE2d 829) (2021).

[15] See OCGA §§ 16-5-102 (a); 16-5-100 (4).

[16] See OCGA § 16-5-23.1 (a).

[17] See *DeLeon v. State*, 289 Ga. 782, 785 (8) (716 SE2d 173) (2011).

2. Huber argues that the trial court erred in denying his motion to dismiss the aggravated stalking charge.

(a) Huber contends that he did not violate an order enumerated in the aggravated stalking statute because there was, "[a]t best," a temporary injunction entered while the divorce was pending.

OCGA § 16-5-91 (a) provides:

A person commits the offense of aggravated stalking when such person, in violation of a bond to keep the peace posted pursuant to Code Section 17-6-110, temporary restraining order, temporary protective order, permanent restraining order, permanent protective order, preliminary injunction, good behavior bond, or permanent injunction or condition of pretrial release, condition of probation, or condition of parole in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

As recited above, following an emergency hearing in March 2021, the superior court entered an "Order on Plaintiff's Motion for Emergency Hearing and Entry of Immediate Restraining Order" (the "March 2021 Order"). In Paragraph 12, titled "Restraining Order," the court granted Rock's "Motion for entry of a Restraining Order against [Huber]" and "immediately restrained and enjoined [Huber] from

9

doing, or attempting to do, or threatening to do, any act of injury, maltreating, molesting, following, harassing, harming or abusing [Rock], either of the parties' minor children, or any member of [Rock's] family . . . in any manner." The court specifically directed Huber not to come within 500 yards of Rock, either child, any member of Rock's family, "nor their respective homes," and to "have absolutely no contact with [Rock]." The court also "authorized and directed" law enforcement officers "to enforce this Order, including the Restraining Orders[18] contained in this Order." Under the broad language of OCGA § 16-5-91 (a), the March 2021 Order prohibiting any contact was a "temporary restraining order" for purposes of the aggravated stalking statute.[19]

(b) Huber argues that he could not stalk someone at his own residence. Specifically, he contends that he and Rock were still legally married on May 12, 2021; the evidence was undisputed that the Residence was the marital residence; and

---

[18] The order also contained a separate "Restraining Order on Photographs/Videos."

[19] See *State v. Davis*, 339 Ga. App. 214, 217 (793 SE2d 507) (2016); compare *Edgecomb v. State*, 319 Ga. App. 804, 806 (738 SE2d 645) (2013) (construing OCGA § 16-5-95 (a)).

the March 2021 Order did not bar him from the Residence but only from coming within 500 yards of Rock.

A person commits aggravated stalking when he, inter alia, contacts another person at or about "a place or places" without the consent of the other person for the purpose of harassing and intimidating the other person.[20] The term "place or places" is defined as "any public or private property occupied by the victim other than the residence of the defendant."[21]

The evidence at trial showed that Huber had not been living at the Residence since January 2021, when Rock filed for divorce. Rock testified that in March 2021, she forwarded a piece of mail to Huber's residence in Athens and that, shortly after that, she received a notice that Huber had submitted a change of address to the post office.

Further, the March 2021 Order granted Rock "sole and exclusive use and possession of the residence that is titled solely in her name" and listed the address. The court further directed Huber not to come within 500 yards of Rock, their son, or Lillian Rock, "nor their respective homes[.]" Based on the foregoing, the evidence

---

[20] OCGA § 16-5-91 (a).

[21] OCGA § 16-5-90 (a) (1).

was sufficient to show that Huber committed the offense of aggravated stalking at a "place" other than his residence.[22]

(c) Huber argues that the evidence was insufficient to show that he was properly served or had knowledge of the contents of the March 2021 Order.

In the March 2021 Order, the court noted "both parties, along with their respective attorneys, initially appeared [for the emergency hearing, via Zoom], but [Huber], on his own accord, left the hearing prior to the start of the evidence, leaving his attorney to represent his interests[.]"

"[T]he aggravated stalking statute, OCGA § 16-5-91 (a), does not include service as a necessary element of the offense."[23] "The only additional proof required by the aggravated stalking statute is that the defendant violated a court order. As a result, it would be inappropriate for this court to engraft onto the statute an additional service element for the offense."[24] Further, the March 2021 Order was admitted into evidence, "[s]o even if notice of the order were required, proof of the written order

[22] See *Slaughter v. State*, 327 Ga. App. 593, 596 (1) (b) (760 SE2d 609) (2014).

[23] *Branch v. State*, 361 Ga. App. 86, 87-88 (2) (863 SE2d 349) (2021).

[24] (Citation and punctuation omitted.) Id. at 88 (2).

12

alone is sufficient to prove notice to [Huber] based on the presumption of regularity in judicial proceedings."[25] Accordingly, this argument fails.

(d) Huber contends that the State failed to prove a pattern of behavior after the March 2021 Order, as required to sustain a conviction for aggravated stalking based on a single violation of a listed order.

> Even a single violation of a protective order may violate OCGA § 16-5-91 (a) if that violation is part of a pattern of harassing and intimidating behavior. To determine whether the evidence shows a pattern of harassing and intimidating behavior, the jury can consider a number of factors, including the prior history between the parties, the defendant's surreptitious conduct, as well as his overtly confrontational acts. We have held that the evidence was sufficient to prove a pattern of harassing and intimidating behavior where it showed that the violation of a protective order was preceded by repeated threats to the victim.[26]

Huber equates "pattern of harassing and intimidating behavior" with stalking and contends that any conduct that occurred prior to the March 2021 Order occurred at the Residence, which until then had "indisputably" been his residence and thus excluded from the legal definition of stalking. Assuming arguendo that the requisite

---

[25] (Citation and punctuation omitted.) Id.

[26] (Citations and punctuation omitted.) *Brooks v. State*, 313 Ga. App. 789, 792 (1) (723 SE2d 29) (2012).

13

"pattern of harassing and intimidating behavior" could not include conduct that occurred while Huber still lived at the Residence, the evidence was sufficient to show that he was not living there between March 20 and 23, 2021, when he sent threatening texts, made threatening phone calls, and showed up uninvited at the Residence and banged on the door with a heavy object. Accordingly, the evidence was sufficient to show aggravated stalking based on a pattern of harassing and intimidating behavior.

3. Huber argues that the trial court erred in denying his special demurrer to the charge of burglary in the first degree because the State had to allege with particularity in the indictment how he was "without authority" when he entered the Residence.

Tracking the language of OCGA § 16-7-1 (b),[27] Count 3 of the indictment charged Huber with burglary in the first degree in that, on May 12, 2021, he "did without authority and with intent to commit a felony therein, to wit: aggravated stalking, enter the dwelling house of another, to wit: . . . Lindsay Rock[.]"

---

[27] OCGA § 16-7-1 (b) provides in relevant part: "A person commits the offense of burglary in the first degree when, without authority and with the intent to commit a felony or theft therein, he or she enters or remains within an occupied, unoccupied, or vacant dwelling house of another or any building, vehicle, railroad car, watercraft, aircraft, or other such structure designed for use as the dwelling of another."

"[A] defendant who has timely filed a special demurrer is entitled to an indictment perfect in form and substance."[28] In a post-conviction appeal of a trial court's pretrial ruling denying a special demurrer, however, we apply a harmless error standard of review.[29]

Even assuming that a perfect indictment was required to specify the exact way in which Huber was "without authority,"[30] the indictment put Huber on notice of the restraining order because Count 5 charged him with aggravated stalking "in violation of a restraining order."[31]

---

[28] *Blackmon v. State*, 272 Ga. App. 854 (614 SE2d 118) (2005).

[29] See *Mosby v. State*, 353 Ga. App. 744, 747 (1) (839 SE2d 237) (2020).

[30] But see *South v. State*, 268 Ga. App. 110, 112 (2) (601 SE2d 378) (2004) (rejecting argument on interlocutory appeal that the indictment failed to specify the exact way in which the acts of aggravated stalking occurred where the indictment "closely tracked the language of the aggravated stalking statute, and adequately informed [the defendant] that he had inappropriately affirmatively contacted the victim in violation of a prior court order").

[31] See *State v. Pittman*, 302 Ga. App. 531, 533 (690 SE2d 661) (2010) ("The two requirements of an indictment are that it definitively inform the accused of the charges against him, so that he may present his defense and avoid surprises at trial, and that it protect the accused against another prosecution for the same offense.") (citation and punctuation omitted).

Further, because the record includes evidence that would have permitted the trial court to find Huber guilty of burglary beyond a reasonable doubt, any error in the trial court's overruling of his special demurrer was harmless and does not warrant reversal.[32] "Without authority" in this context means "without legal right or privilege or without permission of a person legally entitled to withhold the right."[33] The Residence was in Rock's sole possession and ownership. Once Rock withdrew Huber's authority to enter the home, the fact that he used to live there did not give him authority to enter the Residence.[34]

In sum, the judgment is vacated in part and remanded for resentencing to allow the trial court to merge Count 10 into Count 4. The judgment is otherwise affirmed.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. Barnes, P. J., and Land, J. concur*.

---

[32] See *Mosby*, 353 Ga. App. at 753 (6) (a).

[33] OCGA § 16-1-3 (18).

[34] See *Pittman v. State*, 230 Ga. App. 799, 802 (498 SE2d 309) (1998).